[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case was presented to the court at a bench trial on September 6, 2000 on the basis of facts stipulated and agreed to by all the parties. The parties are three law offices and a trustee for certain legal matters, and the issue to be determined is the appropriate division, if any, of a specific portion of a contingency legal fee. The parties are in agreement, and have represented to the court, that all facts necessary for a decision are present in the record.
In 1993, Elizabeth Leonard ("Leonard") engaged the law office of Robert Heering ("Heering") to provide legal services to her, in her individual capacity and in her capacity as guardian and next friend of her minor son, Jeffrey, in connection with injuries suffered by them in an automobile accident involving vehicles driven by Leonard and Carl Taylor. This engagement resulted in a written fee agreement in which Leonard agreed to pay Heering 33 percent of any sums received as a result of her claims for personal injuries. Approximately three months after this engagement, Leonard terminated the engagement of Heering and retained the law firm of Koskoff, Koskoff Bieder ("Koskoff") to pursue the personal injury action. In taking on this matter, a partner of Koskoff represented to Heering on September 21, 1993, that Koskoff would pay Heering one-third of any fee Koskoff received. In a written agreement, Leonard agreed to pay a contingency legal fee of one-third of her recovery for personal injuries up to $300,000 to Koskoff.
After Koskoff had handled the Leonard matter for about two and a half years (during which time a complaint was filed, the pleadings closed and written discovery conducted), Leonard replaced it as her counsel with the firm of Pinney, Payne, VanLenten, Burrell, Wolfe Dillman ("Pinney Payne"). At that time, Koskoff wrote to Pinney Payne stating that it would not request any fee but recounting the arrangement with Heering and asking Pinney Payne to honor Koskoff's agreement to pay Heering one-third of any contingency fee collected. A copy of that letter was sent to both Heering and Leonard. Pinney Payne confirmed the arrangement in a letter to Heering in December, 1996. Pinney Payne also had a written fee agreement with Leonard that its fee would be one-third of any sums collected from the personal injury claims against Taylor. CT Page 11543
In August, 1997, Leonard settled her claims against Taylor for the amount of $265,521.10. This settlement gave rise to an attorney's fee of one-third of that amount — $88,507.03. On behalf of herself and her son, Leonard has received the settlement amount less the one-third contingency fee. According to representations made by Pinney Payne during the trial, at the time the Pinney Payne attorneys reviewed with Leonard the amount and disposition of the settlement in the litigation, Leonard objected to the disbursement of any of the attorney's fee to Heering. The basis for the objection was not explicated to the court, and Leonard chose not to be present at the trial of this matter.
In October, 1998, Pinney Payne filed a "complaint for interpleader." This complaint alleged that there were three claimants to the amount of one-third of the contingency fee. Pinney Payne complaint identified the claimants to this amount ($29,502.34) as Heering, Koskoff and Pinney Payne itself Heering and Koskoff were named as defendants as was Attorney John Power, acting as Trustee for certain of Heering's affairs. It has been represented to the court that Power does not believe he has any interest in this matter, and that all the matters for which he has been appointed trustee have been concluded.
Although not mentioned in the complaint, it appears the rationale for Pinney Payne to institute this litigation is Rule 1.5 of the Rules of Professional Conduct applicable to all attorneys who practice in Connecticut. See Connecticut Bar Association Ethics Committee Informal Opinions 94-17 and 95-19. Rule 1.5(e) provides:
 A division of fee between lawyers who are not in the same firm may be made only if: (1) The client is advised of the compensation sharing agreement and of the particiation of all the lawyers involved, and does not object; and (2) The total fee is reasonable.
The question presented is whether Leonard's objection expressed at the very conclusion of the Taylor litigation prohibits the division of the contingency fee between Pinney Payne, Heering and Koskoff, or any two of them. The court holds that in part it does, and in part it does not.
While there appears to be no question that Leonard now objects to Heering receiving any portion of the fee, there is evidence that her position was not always "so. In its letter from Koskoff to Heering, dated September 23, 1993, Koskoff made the following statement:
 Although she [Leonard] wants us to represent her and her family . . . she wishes that we: (1) protect your CT Page 11544 out-of-pocket expenditures; and (2) because in conversation with her had mentioned [Koskoff] we will treat you as a sort of involuntary referrer.
The Koskoff letter continued by describing its usual referral rate. Not only did Koskoff represent that it was Leonard's desire that Heering receive one-third of any contingency fee, there is evidence that a copy of that letter was sent to Leonard and there is no evidence that she disagreed with that representation of her position. More than two years later, after the matter had been transferred from Koskoff to Pinney Payne, the former wrote the latter requesting that Pinney Payne honor Koskoff's agreement with Heering and pay Heering a portion of any contingency fee earned. A copy of this letter also went to Leonard. There is no evidence of objection from Leonard at that time and several months later Pinney Payne confirmed to Heering in writing that it would honor the agreement to pay him part of any fee.
The court recognizes its obligation to enforce the Rules of Professional Conduct and therefore has undertaken careful consideration of the provisions of Rule 1.5(e). The contents of the rule, as adopted in this state, vary somewhat from the Model Rule as initially drafted by the American Bar Association. In the Model Rule, in order to share in the fee, a lawyer had to provide services proportionate to the fee sought or assume responsibility for the representation. No such restriction is encompassed in the Connecticut version which was adopted to make clear that referral fees could be paid. See Rossi, Attorneys' Fees (2d ed.) Sec. 4.2 at p. 223 (making reference to Kansas Rules of Professional Conduct which adopted the same amendment to Rule 1.5(e) as Connecticut). Furthermore, the client consent requirement relates only to each attorney's participation in the case. The court concludes that the compensation sharing agreement with Heering was at least made known to, and even possibly suggested by, Leonard and that a preponderance of the evidence shows she consented to the arrangement for a substantial period of time, covering some, if not all, of the litigation process. The primary thrust of Rule 1.5(e) is to assure that the client understands and agrees which attorneys will be participating in her representation and how the compensation for such representation will be apportioned. The purpose of this assurance is to allow the client a substantial element of control over her representation. In a litigated matter, the critical time frame for such control extends from initial consultation to the completion of the adversary proceeding, which in this case occurred with the payment of the agreed upon settlement amount. Leonard knew at all times who was representing her interests and only voiced an objection to the proposed payment to Heering after the litigation process had ended. Under those circumstances, the court concludes that the knowledge and consent elements of Rule 1.5(e) have been complied with concerning the CT Page 11545 proposed payment to Heering.[1]
Prior to the trial of this matter, Koskoff had taken the position that it would not seek any of the contingency fee earned in the case. Indeed, its answer to the interpleader complaint, filed on the day of trial, made no claim for any fee. During the trial proceedings, however, Koskoff pointed out the substantial amount of time and work it had put into the Leonard matter prior to the transfer of the file to Pinney Payne (a contention not disputed by any party and accepted by the court) and offered a stipulation signed on behalf of Koskoff and Heering agreeing to split the one-third of the contingency fee at issue between them. The court commends the parties' willingness to resolve the issues amicably and finds the stipulation fair. However, there is no evidence that Leonard had any knowledge during the litigation process of Koskoff's claim to a part of the fee and no evidence that she consented to the compensation arrangement, at any time. Therefore, it is determined that Rule 1.5(e) precludes Koskoff from receiving any portion of the fee.
Finally, Pinney Payne has claimed a portion of the fee at issue as reimbursement for the costs and time involved in bringing this matter to a head before the court. An allowance of $1000 seems to be fair compensation for these items.
Therefore, the court orders that Pinney Payne pay to Heering the amount of and that a final judgment be entered to that effect.
Adams, J.